UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

Som Out                                    :
6318 Paschall Avenue                       :
Philadelphia, PA  19142                    :
                          Plaintiff        :         26-5168
                                           :
v.                                         :
Trans Union, LLC                           :
555 W. Adams Street                        :
Chicago, IL  60661                         :         Jury Trial Demanded
                          Defendant        :

# COMPLAINT

1.    This is a lawsuit for damages brought by an individual consumer for Defendant(s)' alleged violations of the Fair Credit Reporting Act (FCRA). and the Fair and Accurate Credit Transaction Act (FACTA), 15 U.S.C. 1681, et seq.

2.    Jurisdiction is proper because Defendant does business in this jurisdiction and avails itself of the benefits of this jurisdiction.

3.    Venue is proper in this jurisdiction pursuant to 28 USC 1391 et. seq. because key witnesses involved in the case may be located at or near this jurisdiction.

4.    Venue is proper in this jurisdiction 28 USC 1391 et. seq. because a substantial portion of the transaction, occurrences, acts or omissions took place in this jurisdiction.

5.    Venue is proper in this jurisdiction 28 USC 1391 et. seq. because Defendant has offices, employees and a place of business in this jurisdiction.

6.    This Court has Federal question jurisdiction pursuant to 28 USC 1331, and 15 USC 1681 et. seq.

7.    Plaintiff is Som Ou, a resident of Philadelphia county, with a mailing address of 6318 Paschall Avenue, Philadelphia, PA  19142.

8.    Defendant is Trans Union, LLC (Trans Union), a corporation with a principal place of business address of 555 W. Adams Street, Chicago, IL  60661.

**COUNT ONE: Violation of the Fair Credit Reporting Act (FCRA)**
**Failure to Provide Plaintiff With Copy of Plaintiff's Consumer File**
**Unlawful Discrimination and Retaliation**

9. The previous paragraphs of this Complaint are incorporated by reference and made a part of this Complaint.

10. At all times mentioned herein, Plaintiff was a consumer as defined by 15 USC 1681.

11. At all times mentioned herein, Plaintiff was a person as defined by 15 USC 168la (c).

12. At all times mentioned herein, Plaintiff was in individual as defined by 15 USC 1681a of the FCRA.

13. At all times mentioned in this Complaint, Defendant maintained a "file" on Plaintiff as defined by 15 USC 1681(a)(d) et. seq.

14. At all times mentioned in this Complaint, Defendant was a "consumer Reporting Agency" as defined by 15 USC 1681a et. seq. of the FCRA.

15. On or about July 7, 2024, Plaintiff contacted Defendant by written letter and requested a copy of the information contained in their consumer file which was maintained by Defendant. See attached exhibits.  Throughout this Count of this Complaint said letter shall be referred to as the "request letter."

16. On or about June 24, 2004, the Federal Trade Commission released regulations which proscribed the format for correspondence that an individual seeking his or their consumer report should conform to.

17. Plaintiff's request met and exceeded those guidelines of the Federal Trade Commission.

18. At the time that Plaintiff sent their request letter to Defendant, Plaintiff furnished proper proof of identity and proper proof of mailing address.  Plaintiff furnished a copy of their photo ID.

19. Upon information and belief at the time that Plaintiff requested their consumer file from Defendant, Defendant had Plaintiff's correct mailing address already on file.

20. Defendant had no reasonable basis to doubt the authenticity of Plaintiff's letter.  The letter appeared facially valid for reasons including but not limited to the following.

   a. Plaintiff furnished proper proof of their ID and proof of their mailing address.

   b. Defendant already had Plaintiff's historical address on file for a considerably long amount of time, as Plaintiff had lived at their residential address in their request letter for over 30 years.

    c.   Defendant knew or should have known that Plaintiff's request letter contained a valid address for Plaintiff based on Defendant Trans Union, LLC's own records on file since Plaintiff had lived at their address for over 10 years.

    d.   Plaintiff furnished their telephone number to Defendant which Defendant could have called if they were concerned about Plaintiff's identity and Defendant never called Plaintiff's telephone number

    e.   Plaintiff provided their attorney's contact information which Defendant could easily have used to verify Plaintiff's identity.

    f.   Plaintiff provided the contact information of Defendant's own lawyers so that Defendant could have verified Plaintiff's identity if they had wanted to.

21.    Defendant refused to provide Plaintiff with a copy of Plaintiff's consumer report, even though Defendant was legally obligated to do so.

22.    Instead of sending Plaintiff a copy of their consumer file, Defendant sent Plaintiff a form response letter dated July 19, 2024 denying Plaintiff a copy of their consumer file.  See attached exhibits.  Throughout this count of the complaint said letter shall be referred to as "form response letter" or "response letter."

23.    Defendant's response letter was condescending and patronizing toward Plaintiff.

24.    Defendant's response letter purported to warn Plaintiff of the dangers of using a credit repair service.

25.    Defendant's response letter went into great detail about Plaintiff's use of a credit repair service, but no effort was made in the letter to explain why Plaintiff's request letter was deficient.

26.    Defendant's response letter implied or suggested that a credit repair service had asked that Plaintiff's credit report / file be sent to the credit repair service, when in fact that did not happen at all.  Plaintiff's hand signed letter accompanied by proper photo identification and verifiable address requested that the file be sent directly to Plaintiff and not to any credit repair service.

27.    Defendant's response letter implicitly suggested that Plaintiff was not entitled to receive a copy of their own consumer file merely because Plaintiff may have used a credit repair service which aided Plaintiff in drafting the letter requesting Plaintiff's consumer file.

28.    Upon information and belief, the reason that Defendant did not send Plaintiff a copy of Plaintiff's consumer file was retaliation because Defendant suspected that the letter had been drafted by a credit repair organization in anticipation of possible litigation.

29.     Upon information and belief, the reason that Defendant did not send Plaintiff a copy of their consumer file was because Plaintiff's request letter revoked all arbitration clauses in any prior agreements with Defendant and Defendant was trying to avoid the consequences of a potential lawsuit by Plaintiff.

30.     Even if Plaintiff had the help of a credit repair service in drafting the request letter that WOULD NOT HAVE BEEN RELEVANT.  It would have been NO EXCUSE for Defendant's obligation to send Plaintiff one free CONGRESSIONALLY MANDATED copy of their consumer file.

31.     Even if Plaintiff had sent the letter in anticipation of litigation against Defendant that would have been NO EXCUSE for Defendant's obligation to send Plaintiff one free CONGRESSIONALLY MANDATED copy of their consumer file.

32.     Instead of telling Plaintiff what additional information was needed to get their consumer file Defendant directed Plaintiff to Defendant's own self-serving website.

33.     Defendant's self-serving website contained terms and conditions of use.  If and when a consumer uses the website they subject themselves to Defendant's self-serving terms and conditions, according to the website.

34.     If Plaintiff had used the website recommended by Defendant in the form letter, plaintiff would have had to have agreed to certain terms and conditions in order to receive a copy of their consumer disclosure.  The terms and conditions required the consumer to waive certain important rights conferred upon them by the Fair Credit Reporting Act that they otherwise would have retained.

35.     If use of the website required assent to Defendant's self-serving terms and conditions then the consumer disclosure WOULD NOT HAVE BEEN FREE because Plaintiff would have been required to trade away some of their rights in order to get their consumer disclosure.  Therefore Defendant did not provide Plaintiff with one free annual copy of our consumer disclosure as required by 15 USC 1681g et. seq.

36.    Defendant's response letter never described what additional documents or steps that Plaintiff should take to verify their identity other than the following.

> a.   Directing Plaintiff to Defendant's  self serving website which was self-serving to Defendant for the above stated reasons.

> b.   Defendant's response letter did provide a toll free telephone number, 800-916-8800, for Plaintiff to call.  But the telephone number was problematic for the following reasons.

    i.   It is ambiguous from the letter whether the number was intended for consumers to start disputes or if it was intended for consumers to obtain their consumer disclosures.

    ii.   Upon information and believe there was an automated procedure whereby consumers would call the tele phone number and then be directed back to Plaintiff's website to complete the process to obtain their consumer reports.  This would have been Defendant's same self-serving website which contained one sided terms and conditions beneficia to Defendant but not to Plaintiff.

37.    Defendant's refusal to provide Plaintiff with a FREE copy of Plaintiff's consumer file was unreasonable.

38.    By unreasonably refusing to give Plaintiff a FREE annual copy of Plaintiff's consumer file, Defendant violated 15 USC 1681g et. seq. of the FCRA.

39.    15 USC 1692 et. Seq requires that a consumer reporting agency provide the consumer their consumer file disclosure / consumer report within 15 days of the receipt of the consumer's request.  Therefore the statute of limitations did not begin to run until 15 days after Plaintiff's request letter was receive by Defendant, and Plaintiff's claim is still within the statute of limitations.

**LIABILITY**

40.    The previous paragraphs of this Complaint are incorporated by reference.

41.    It is believed and averred that the acts and omissions described in this Complaint were willful, wanton, calculated and intentional for the aforementioned reasons.

42.    Defendants motives were to steer consumers such as Plaintiff toward its self-serving website and to limit their ability to obtain their free annual consumer reports unless they waived their rights in which case the reports would not be free.

43.    Upon information and belief numerous consumers were affected similarly as Plaintiff period.

44.    Defendant TransUnion has in the past attempted to invoke mandatory arbitration clauses from its website as a defense to consumer litigation. See Sgouros v. Transunion Corporation LLC, United States Court of Appeals for the Seventh Circuit, Docket No. 15-1371, Decided 2016.

45.    By attempting to steer and dissuade Plaintiff from using the U.S. Mail to correspond with Trans Union, LLC, Defendant was attempting to steer Plaintiff into using Trans Union's website and to set up an account with Trans Union, LLC so Defendant could profit monetarily and legally.

46.    By attempting to steer Plaintiff away from the U.S. Mail and toward Trans Union, LLC's website, Defendant maximized its chances to limit its own liability.

47.    Defendant is liable for the acts and omissions of its agents and employees under the doctrine of respondeat superior because Defendant's agents were acting within the scope of their employment with Defendant when such acts or omissions occurred.

48.    Any mistake made by Defendant(s) would have included a mistake of law, not just fact.

49.    Any mistake made by Defendant(s) would not have been a reasonable or bona fide mistake.

## DAMAGES

50.    The previous paragraphs of this Complaint are incorporated by reference and made a part of this Complaint.

51.    Defendant's refusal to provide Plaintiff with a copy of their consumer file constituted an unnecessary hindrance and an undue delay to Plaintiff.

52.    Defendant's refusal to provide Plaintiff with a copy of their consumer file constituted an unnecessary hindrance and an undue delay to Plaintiff because Plaintiff incurred costs to send the request letter.

53.    Plaintiff suffered at least 73 cents actual damages more or less including but not limited to postage, etc.

54.    Plaintiff suffered a concrete injury and a concrete harm by being denied their consumer file.  This was a harm as defined by two recent U.S. Supreme Court cases, Spokeo v. Robins, 578 U.S 330 (2016), and Trans Union v. Ramirez, 141 S. Ct. 2190 (2021).

55.    Plaintiff believes and avers that they are entitled to $1,000.00 statutory damages pursuant to 15 USC 1681n et. seq. because Defendant's acts and omissions were willful, wanton and intentional.

56.    Because Defendant's acts and omissions were willful, wanton and intentional, Plaintiff believes and avers that Plaintiff is entitled to punitive damages.  Plaintiff requests punitive damages against Defendant(s) in the amount to be determined by this Honorable Court.

57.    For purposes of a default judgment, Plaintiff believes and avers that the amount of such punitive damages should be no less than $9,000.00 because Defendant(s) actions had the effect of compromising the integrity of 15 USC 1681g et. seq.

## ATTORNEY FEES

58.     The previous paragraphs of this Complaint are incorporated by reference.

59.     Plaintiff is entitled to attorney fees pursuant to 15 USC 1681 n et. seq. if this case is successfully prosecuted.

60.     Plaintiff believed and avers that the value of such attorney fees is $600 per hour or other amount determined by this Honorable Court

61.     Plaintiff believes and avers that the attorney fees are in the amount of $3,000.00 at a reasonable rate of $600.00 per hour, enumerated below, or such other amount determined by this Honorable Court.

|     |     |     |
| --- | --- | --- |
| a. | Consultation with client and review of file | 1 |
| b. | Drafting, editing, review, of Complaint and related documents | 1 |
| c. | Follow up contact with Defendant and client | 2 |

Total:  4 hours @ $600 per hour = $2,400.00

62.     Plaintiff's attorney fees continue to accrue as the case moves forward.

63.     The above stated attorney fees are for prosecuting this matter and reasonable follow up.

## OTHER RELIEF

64.     Plaintiff requests a jury trial in this matter.

65.     Plaintiff demands a jury trial in this matter.

66.     Plaintiff seeks such other relief as this Honorable Court may deem just and proper,

Wherefore; Plaintiff demands judgment against Defendant in the amount of no less than $12,400.72 as enumerated below,

72 cents actual damages, more lor less
$1,000.00 statutory damages under the FCRA
$2,400.00 attorney fees
$9,000.00 punitive damages
$12,400.72

/s/ Vicki Piontek                                  7-23-2026
Vicki Piontek, Esquire                        Date
Attorney for Plaintiff
58 East Front Street
Danville, PA  17821
2150-290-6444
Fax: 866-408-6735
vicki.piontek@gmail.com